CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 25, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALUCIOUS WILLIAMS, JR., ) | |
|     Plaintiff, ) | Civil Action No. 7:22-cv-00668 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| GILBERT, *et al.*, ) | United States District Judge |
|     Defendants. ) | |

**MEMORANDUM OPINION**

    Plaintiff Alucious Williams, Jr., is a Virginia Department of Corrections (VDOC) inmate currently incarcerated in North Carolina pursuant to an Interstate Corrections Compact. Proceeding *pro se*, plaintiff brought a lawsuit alleging violations of his constitutional rights during his incarceration at Red Onion State Prison. That suit was severed into several actions, including this one, which alleges claims of excessive force and retaliation against defendants Cpt. Gilbert, Sgt. L. Hall, Correctional Officer Couch, Correctional Officer Jeremy Dotson, Devin Dotson, Officer Andrew Adams, and Kevin Clark. (*See* Compl., Dkt. No. 1; Dkt. No. 1-1; Case No. 7:21-cv-222.)

    All defendants except Mr. Clark filed a motion for summary judgment. (Dkt. No. 24.)[1] This motion will be granted.

I. BACKGROUND

    Williams alleges that on November 24, 2020, due to "ongoing harassment" of several officers, he covered the window of his cell in the C-Building. (Compl. ¶¶ 11–13.) Sgt. Hall and Cpt. Gilbert were called to plaintiff's cell. (*Id.* ¶ 14.) Sgt. Hall placed the tube of a can of mace

---

[1] Counsel for the other defendants declined to accept service on behalf of Clark. (Dkt. No. 15.) Clark was later served on May 19, 2023. (Dkt. No. 36.) Clark has not appeared in this action.

under his door and administered two to three "douse[s]" of mace. (*Id.* ¶ 17.) Sgt. Hall then took a "very large" canister of O.C. gas and sprayed Williams two to three more times. Williams claims that he was sprayed for 10–15 seconds straight on the final spray. (*Id.* ¶ 18.) Next, he alleges that correctional officers Dotson, Couch, Clark, and two unknown officers[2] entered his cell, and he was pushed onto his bunk. While laying face down on the bunk, Clark began to punch him in his right ear. (*Id.* ¶ 19.)

Williams brings the following claims: (1) Sgt. Hall used excessive force against him on November 24, 2020, by spraying him with mace, in violation of Eighth and Fourteenth Amendment rights, *id.* ¶¶ 17–18, 30; (2) Cpt. Gilbert failed to protect him on November 24, 2020, from the actions of his subordinates, in violation of his Eighth and Fourteenth Amendment rights, *id.* ¶¶ 20, 29; (3) Couch, Adams, Jeremy Dotson, and Devin Dotson used excessive force against him and failed to intervene to prevent the use of force on November 24, 2020, in violation of Williams' Eighth and Fourteenth Amendment rights, *id.* ¶¶ 19, 32; and (4) Cpt. Gilbert retaliated against him for filing a lawsuit and utilizing the prison grievance procedure in violation of his First, Eighth, and Fourteenth Amendment rights, *id.* ¶ 33.[3]

**Exhaustion of Administrative Remedies**

In support of their motion for summary judgment, defendants submit the affidavit of C. Vilbrandt, Grievance Coordinator at Red Onion. (Vilbrandt Aff., Dkt. No. 25-1.) Vilbrandt oversees the daily operations of the Inmate Grievance Department at Red Onion. Defendants'

---

[2] Dotson was later identified as Jeremy Dotson, and the two unknown officers were identified as Devin Dotson and Officer Andrew Adams. (Dkt. No. 23.)

[3] Williams also brings an excessive force claim against Clark (Compl. 31), but that claim is not implicated by defendants' motion.

sole argument in favor of summary judgment is that Williams failed to exhaust his administrative remedies under the VDOC's grievance procedure prior to filing this lawsuit.[4]

VDOC Operating Procedure (OP) 866.1, Offender Grievance Procedure, is a mechanism for inmates to resolve complaints and allows corrections officials a means to evaluate potential problems and, if necessary, correct said problems in a timely manner. Each offender is entitled to use the grievance procedure for problem resolution. (Vilbrandt Aff. ¶ 4, Encl. A.)

OP 866.1 provides that all issues which affect the grievant personally are grievable except those pertaining to policies, procedures, and decisions of the Virginia Parole Board, disciplinary proceedings, State and Federal Court decisions, laws and regulations, and other matters beyond the control of the VDOC. Grievances that do not meet the filing requirements of OP 866.1 are returned to the offender within two working days from the receipt noting the reason for return on the intake section of the grievance form. The offender is instructed how to remedy any problems with the grievance. (Vilbrandt Aff. ¶ 5.)

Regular Grievances must be submitted within thirty calendar days from the date of the incident. Before submitting a regular grievance, an inmate must demonstrate that she made a good faith effort to informally resolve the complaint, which can be done by submitting a written/informal complaint. Prison staff should respond to the offender's Informal Complaint within 15 calendar days to ensure that informal responses are provided prior to the expiration of the 30-day period in which an offender may file his Regular Grievance. If the offender is dissatisfied with the response to the Informal Complaint, the offender may submit a Regular Grievance on the issue. If he submits a Regular Grievance, he is required to attach the Informal

---

[4] Defendants reserve the right to file a motion for summary judgment on the merits if the court rules against them in this motion.

Complaint as documentation of his attempt to resolve the issue informally. Even if an inmate has not received a response to an Informal Complaint, the inmate must still submit the Regular Grievance within 30 days from the date of the occurrence/incident or discovery of the occurrence/incident. (Vilbrandt Aff. ¶ 6.)

Plaintiff has been incarcerated at Red Onion on several occasions. During the time relevant to the claims in this lawsuit, Williams was confined at Red Onion from October 30, 2017, through October 12, 2021, when he was temporarily transferred to Marion Correctional Treatment Center. Offenders are oriented to the Offender Grievance Procedure when they are initially received into the VDOC, as well as each time they are transferred to a different facility. During his confinement at Red Onion, Williams had access to and utilized the grievance procedure and had approximately six Regular Grievances accepted for intake and processed through Level I (one grievance) or Level II (five grievances). He also had approximately 80 Informal Complaints accepted and processed at Red Onion for this period. (Vilbrandt Aff. ¶ 11.)

Williams submitted a Regular Grievance concerning his allegations against these defendants regarding the incident on November 24, 2020, but it was untimely. Thus, no Regular Grievance was accepted for intake and appealed to the highest level of review. (Vilbrandt Aff. ¶ 12.) He has not had a Regular Grievance accepted into the grievance process regarding his claims in this case. (*Id.* ¶ 14.)

On July 24, 2021, Williams submitted a Regular Grievance in which he stated that on multiple occasions, including on November 24, 2020, he was the victim of assaults and several attempts to kill him because he utilized the prison grievance process. On July 27, 2021, the Regular Grievance was rejected at intake by C. Meade, the prior Grievance Coordinator, due to an expired filing period. Williams appealed the intake decision to the Regional Ombudsman.

On August 30, 2021, the Regional Ombudsman upheld the intake decision in accordance with OP 866.1. The Regional Ombudsman's decision is final. (Vilbrandt Aff. ¶ 13.)

## II.  ANALYSIS

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25. Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

The court is charged with liberally construing complaints filed by *pro se* litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). At the summary judgment stage, however, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. *See Chisolm v. Moultrie*, C/A No. 4:21-03506-BHH-TER, 2023 WL 3631798, at *1 (D.S.C. May 2, 2023). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

**B. Exhaustion under the Prison Litigation Reform Act (PLRA)**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). An inmate's failure to follow the required procedures of the prison administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion serves "two main purposes." *Woodford*, 548 U.S. at 89. First, the exhaustion requirement "protects administrative

agency authority" by allowing the agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Id.* Second, "exhaustion promotes efficiency" because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Shipp v. Punturi*, Civil Action No. 7:21cv00414, 2023 WL 7125259, at *3 (W.D. Va. Oct. 30, 2023) (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)). Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

As detailed herein, Williams did not exhaust his administrative remedies prior to filing this lawsuit. This is demonstrated by the evidence providing that Vilbrandt conducted a review of Williams' grievance file. The only attempt by Williams to grieve issues related to the alleged November 24, 2020 incident was rejected at intake as untimely. Thus, Williams did not use "all steps that the agency holds out," and he did not use those steps "properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90.

In his response to the motion for summary judgment, Williams argues that he was "denied of informal complaints and grievances from November 24, 2020, through December 7, 2020." (Dkt. No. 44 at 2.) Williams also claims to have been assaulted on December 1, 15, and 28, 2020. (*Id.* at 2–3.) Therefore, he was under "extreme duress" and was "being denied of informal complaints, grievances, the telephone, and all of his personal property," rendering his administrative remedies "unavailable." (*Id.* at 3.) These unsworn assertions and allegations are insufficient to defeat summary judgment. It is "well established that unsworn, unauthenticated

7

documents cannot be considered on a motion for summary judgment," and that "unsworn statements do not qualify as affidavits and are not considered by the Court when ruling on a motion for summary judgment." *Solis v. Prince George's Cnty.*, 153 F. Supp. 2d 793, 798–99 (D. Md. 2001) (citing *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)). Because submitting "an affidavit in compliance with Rule 56(e) is not an onerous task," *id.* at 799, the court will not consider the unsworn evidence.[5] Therefore, Williams' suit is barred by the PLRA, and defendants are entitled to summary judgment. *See, e.g.*, *Tracey v. Kirkland Corr. Inst.*, Civil Action No. 1:12-cv-01614-JMC, 2013 WL 3049410, at *4 (D.S.C. June 17, 2013) (finding that defendant is entitled to summary judgment on exhaustion issue where "a review of Plaintiff's grievance history reveals no grievances filed before the initiation of this litigation" and plaintiff's "vague and general allegations" that grievance forms were "not readily available" are "insufficient to overcome the undisputed evidence that he has failed to show any concrete attempts to exhaust his administrative remedies on any of his claims").

### III.  CONCLUSION

Based on the foregoing, the court will issue an appropriate order granting defendants' motion for summary judgment.

Entered: March 24, 2024.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[5] In his verified complaint, Williams states that Red Onion State Prison staff "denied him of a informal complaint and grievance." (Compl. ¶ 27.) This bald assertion is not enough to create an issue of fact. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) ("Airy generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment."); *see also Jones v. Stamper*, No. 1:12cv352 (AJT/IDD), 2013 WL 6448847, at *2 n.2 (E.D. Va. Dec. 6, 2013) (explaining that a *pro se* prisoner's sworn pleading or brief with a "declaration under oath . . . is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity").